IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION


UNITED STATES OF AMERICA

      v.                            CRIMINAL CASE NO.
                                        ELH-14-259

DANIEL JONES,

     Defendant
_____/


              (Sentencing)
           Friday, August 8, 2014
           Baltimore, Maryland


Before:  Honorable Ellen L. Hollander, Judge



Appearances:

      On Behalf of the Government:
       Michael C. Hanlon, Esquire


      On Behalf of the Defendant:
       Allison R. Levine, Esquire




Reported by:
Mary M. Zajac, RPR, FCRR
Fourth Floor, U.S. Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

1          (Proceedings at 3:06 p.m.)

2          MR. HANLON:  Your Honor, I call United States versus

3     Daniel Jones, Criminal Case Number ELH-14-0259.  This matter is

4     set for sentencing.  Michael Hanlon for the United States.

5          THE COURT:  All right.  Counsel?

6          MS. LEVINE:  Good afternoon, Your Honor.  For the

7     record, Allison Levine, of Roland Walker and Marc Zayon, on

8     behalf of Mr. Daniel Jones, who is directly to my right.

9          THE COURT:  All right.  If your client is ready to

10    proceed.  Of course, please have a seat.

11          Counsel, are you satisfied --

12          MS. LEVINE:  Your Honor, if I may, I know that -- I've

13    been over in Judge Bennett all week.  We just had a verdict.  If

14    I may have just a moment or two with my client.

15          THE COURT:  Sure.  I just got word that you all were

16    ready.

17          MS. LEVINE:  I just need a moment or two to talk and

18    let him know what's going to go on.

19          THE COURT:  Okay.  Take all the time you need.  I'll

20    take a recess.  Let me know when you're ready.

21          (Recess.)

22          THE COURT:  Have you had enough time, counsel?

23          MS. LEVINE:  Yes.  Thank you, Your Honor.

24          THE COURT:  Okay.  Can you assure me, counsel, that

25    your client is both physically and mentally able to proceed to

1    sentencing?

2            MS. LEVINE:  He is physically and mentally ready to

3    proceed, Your Honor.

4            THE COURT:  Okay.  And has he either personally read or

5    have you read to him the content of the Presentence Report?

6            MS. LEVINE:  He has personally read it, and my

7    colleague, Jason Silverstein, visited him and they went over it

8    together.

9            THE COURT:  Okay.  Then you may have a seat.

10           We are here for sentencing in connection with the

11   defendant's plea of guilty on June 4, 2014, to Count One of an

12   information, charging possession of a firearm by a convicted

13   felon, in violation of 18 USC Section 922(g)(1).  And that is a

14   Class C felony.  Of course I've read the Presentence Report, and

15   that is ECF 29.

16           I'm also mindful that, under Paragraph 11 of the plea

17   agreement, the plea was entered under Rule 11(c)(1)(C), calling

18   for a total sentence of 72 months of imprisonment, with the

19   sentence to run from November 25 of 2013.

20           Let me explain to Mr. Jones exactly how we'll be

21   proceeding this afternoon.

22           It is the Court's responsibility, pursuant to several

23   cases in the United States Supreme Court and the United States

24   Court of Appeals for the Fourth Circuit, to undertake the

25   calculation of what we call the advisory sentencing guidelines.

1    As the name suggests, these guidelines are advisory and not

2    mandatory.  Even though the parties have agreed upon a

3    disposition, the Court must nonetheless actually make these

4    calculations, and make them correctly.  These calculations serve

5    as what we call the starting point, or the benchmark, in arriving

6    at a sentence that is appropriate.

7            In every case, of course, the Court nonetheless must

8    make an individualized assessment based on the person who appears

9    for sentencing and also, of course, the circumstances of the

10   offense.  The Court never presumes the sentence is necessarily

11   one that falls within the guidelines, even though the Court must

12   make the calculations.  As I said, each case must be analyzed

13   individually.

14           With this background, though, I'm going to make the

15   calculations.  And then, counsel, if I've made any mistakes or

16   errors, I'll invite you to tell me.

17           The Sentencing Commission guideline for a violation of

18   18 USC Section 922(g)(1) is found in Section 2K2.1(a)(2) of the

19   guidelines.  And, Mr. Jones, when we talk about the guidelines,

20   it's a pretty thick manual.  Every section I mention you can

21   actually find in here.  And a lot of things get mentioned.  There

22   are statutes.  That's something separate.  There are rules.

23   That's something else.  But for purposes of making sure you

24   understand what I'm talking about for the guidelines, it's based

25   on this pretty thick manual.

1        So we look to 2K2.1(a)(2), and it calls for a base

2    offense level of 24.  This is because you committed the instant

3    offense that brings you here today subsequent to sustaining at

4    least two felony convictions for either a crime of violence or a

5    controlled substance offense.

6        Because the firearm was stolen, the base offense level

7    is increased by two.  This is under 2K2.1(b)(4)(A) of the

8    guidelines.  And because the firearm was used in connection with

9    another felony offense, the base offense level is increased

10    again, this time by four levels.  This is under 2K2.1(b)(6)(B).

11        When you add everything up before any deductions, you

12    arrive at an offense level of 30.

13        There are some deductions.  Two, because you have

14    accepted responsibility for your criminal misconduct.  This is

15    under 3E1.1(a).  And in anticipation of a motion by the

16    government, as agreed upon in the plea agreement, you would get

17    one more deduction under Section 3E1.1(b) for your timely

18    notification of your intention to plead guilty.  Does the

19    government so move?

20        MR. HANLON:  The government so moves, Your Honor.

21        THE COURT:  That motion would be granted.  So there's a

22    total of three deductions, giving a final offense level of 27.

23        In terms of the defendant's criminal history

24    category -- and this is something the Court must consider as part

25    of the guideline calculation -- the defendant presents with two

1    prior felony offenses that qualify, it seems to me, from looking

2    at them.  And if there's any dispute, I'm going to ask counsel to

3    let me know.  He has a conviction for possession with the intent

4    to distribute.  And this was an offense for which he was found

5    guilty in November of 1999 in the Circuit Court for Baltimore

6    City.  And he looks like he had a time-served sentence and placed

7    on probation.  He was found guilty of violating that probation

8    and ultimately received a three-year sentence.

9           And then he has a conviction for first degree

10   assault -- and I pause to note it's not second degree, it's first

11   degree assault -- and use of a handgun in the commission of a

12   crime of violence, and possession with intent to distribute.  And

13   these offenses, he was found guilty of them on May 7 of 2001.

14   And he received, looks like a sentence of 10 years suspend all

15   but five.  Is that right?

16          MR. HANLON:  That's the government's reading, Your

17   Honor.

18          MS. LEVINE:  Yes.

19          THE COURT:  Okay.  So this gives the defendant a

20   criminal history score of six points and a criminal history

21   score -- excuse me.  Yes.  Six points.  And that translates to a

22   criminal history category of three.  So far any issues, counsel?

23          MR. HANLON:  No, Your Honor.

24          MS. LEVINE:  No, Your Honor.

25          THE COURT:  In terms of the statute, the maximum term

1    of imprisonment is 10 years under 18 USC Section 924(a)(2). And,

2    under the guidelines, based on a total offense level of 27 and a

3    criminal history category of 3, the range for imprisonment is 87

4    to 108 months.

5            In terms of supervised release, if a term of

6    imprisonment is imposed, by statute the Court may impose a term

7    of supervised release of not more than three years. This is

8    under 18 USC Section 3583(b)(2).

9            In terms of the guidelines, if the Court imposes a term

10   of imprisonment of more than one year, then under 5D1.1(a),

11   supervised release would be required. The guideline range is at

12   least one year, but not more than three. This is under

13   5D1.2(a)(2) of the guidelines.

14           By way of 18 USC Section 3561(c)(1), the defendant

15   would be eligible for not less than one, nor more than five,

16   years of probation. Under the guidelines, he is not eligible for

17   probation. This is under 5B1.1(a), Application Note 2.

18           By statute, the maximum fine is $250,000. This is

19   under 18 USC Section 3571(b)(3). Under the guidelines,

20   5E1.2(c)(3), the fine range is from $12,500 to $125,000. There

21   is a mandatory special assessment of $100 required by law.

22           Under Paragraphs 12 and 13 of the plea agreement, as

23   part of it, the defendant agreed to the entry of an order of

24   forfeiture. I have been presented with a consent order of

25   forfeiture. And it pertains to a Taurus Model PTAF 9 millimeter

1    pistol; $10,751 in US currency that was seized on November 25,

2    2013; and $760 in US currency seized on November 25 of 2013, all

3    more particularly described in the consent order of forfeiture.

4    It doesn't have the defendant's name on it but --

5              MR. HANLON:  Did I make a -- oh, I'm sorry.  The

6    signature line, Your Honor?

7              THE COURT:  It just has your --

8              MR. HANLON:  That's correct, Your Honor.  Since it's a

9    consent and since it's already contemplated in the plea

10   agreement, I just signed it myself.  I did not ask the defense to

11   sign it.  I don't think the defense has an objection.

12             MS. LEVINE:  I have no objection.  I've gone over the

13   document with my client.

14             THE COURT:  Okay.  Does he have any objection?

15             MS. LEVINE:  No.  I've gone over everything with him.

16             THE COURT:  Okay.  So I will be signing the consent

17   order of forfeiture as part of the plea agreement.

18             So I think I've covered everything that is required by

19   way of guideline calculations.  Any objections, errors?  Any

20   issues in dispute?

21             MR. HANLON:  Not from the government, Your Honor.

22             MS. LEVINE:  No, Your Honor.  We did do a pre-plea

23   investigation.  There is a report.  And everything is consistent

24   with that report.

25             THE COURT:  Okay.  So I guess my question will be,

1  starting with the government, in terms of the (C) plea of 72

2  months, it is below the guidelines.  So I will be interested in

3  hearing from you, Mr. Hanlon, as to why the Court should go along

4  with the (C) plea.

5       MR. HANLON:  Certainly, Your Honor.  We are, I believe,

6  if my math is correct, 15 months below the guidelines in this

7  case with this recommendation, assuming that math is correct.  87

8  minus 72, I think, is 15 months.

9       The background of this, Your Honor, I'll come to two

10  reasons why I would ask the Court to consider that differential

11  in this case.  There is a background here that, where Ms. Levine

12  and Mr. Silverstein and I had a pretty healthy period of time,

13  following the defendant's initial appearance and prior to any

14  indictment in the case, to discuss and to negotiate, to discuss

15  his background, to discuss the circumstances of the prior

16  convictions and the circumstances of this case.  So there was a

17  negotiation that led to all of this.

18       At the end of the day, in addition to just the time

19  that I had to sort of reflect on this, there were two things that

20  led me to believe that this is a case where the government felt

21  comfortable recommending something that we knew would be a little

22  bit below the guidelines.

23       Number one, the defendant's acceptance of

24  responsibility in this case was extremely prompt, much more

25  prompt than I'm accustomed to seeing in many cases.  Leaving

1   aside the fact that he sort of accepted responsibility on the

2   night of the offense, once he had his initial appearance in

3   federal court, it was an extremely quick process of the defense

4   approaching me and saying, he's ready to accept some

5   responsibility here.  And that's one the reasons why this was a

6   plea to an information with a waiver of indictment, rather than

7   an indictment with full pretrial litigation.  That was certainly

8   meaningful.

9          It preserved a lot of government resources and

10  demonstrated, I think, a willingness on the part of this

11  defendant to take responsibility and move forward.  That is

12  meaningful to me.  And it often does cause me, in a

13  pre-indictment context, to be comfortable with a certain 3553(a)

14  recommendation that maybe I won't be comfortable with later on.

15         The other thing, Your Honor, is with respect to the

16  defendant's criminal history -- and it is a significant criminal

17  history, Your Honor, I'm certainly not going to suggest

18  otherwise -- but I did take note of the fact that the defendant

19  is a base offense level 24, which means that both his base

20  offense level and his criminal history category are both being

21  driven substantially by convictions that are both more than a

22  decade old at the time of the incident.  I'm not going to suggest

23  that that's massive mitigation, Your Honor.  These are

24  significant convictions, particularly the first degree assault.

25  But they did cause me to believe that maybe something below

1    guidelines, particularly in a pre-indictment context, was

2    something that I would feel comfortable with, that I felt could

3    be justified under 18 USC Section 3553(a).

4         At the end of the day, Your Honor, the 3553(a) factors

5    I think are most important are the nature and circumstances of

6    the offense, the defendant's criminal history, the need to

7    protect the community, and the need to deter the defendant.

8    Clearly, those are factors that call for a substantial period of

9    imprisonment.  The parties are recommending a substantial period

10   of imprisonment of six years.

11        In the unique context of this case, the

12   super-acceptance of responsibility and the criminal history,

13   which is very serious, I think needs to be put in context, I do

14   believe that a modestly below-guidelines sentence is supportable

15   in this case, and the government recommends 72 months.

16        THE COURT:  Okay.  Thank you, Mr. Hanlon.  Ms. Levine?

17        MS. LEVINE:  Thank you, Your Honor.  If I may, I have

18   known Mr. Jones for a while.  I have been involved in this case

19   since the day that he was arrested.  That next day I was at his

20   bail review when it still in state court on November 25th.

21        Once it came over to the federal government, I was

22   speaking with Mr. Hanlon.  We had been in constant communication.

23   Right away, my client expressed an interest in accepting

24   responsibility and moving forward so that we could expedite the

25   process and that he wouldn't be wasting the government's

1    resources.  He has accepted responsibility.

2             If I may talk briefly about his criminal history.  We

3    did go forward with a pre-plea investigation.  The report is in

4    front of me.  I will concede that there is a significant criminal

5    history.  But, again, there is nothing that has occurred within

6    the past 10 years.  And I believe that's because he was around

7    18, 19 years old when those prior events did occur.

8             Since that time, he has found himself, he has young

9    children, he has taken care of them, he wants to be a provider

10   for them.  He doesn't want to grow up and have his children look

11   at him the way that he remembers his household without his

12   father.  So he understands that there is a significant period of

13   incarceration that is being recommended pursuant to the plea,

14   which is the 72 months, and with the recommendation that it date

15   back to November 25th, which was the date of the arrest.

16            However, he is extremely interested in serving time,

17   getting out, and being able to provide for his family, be home

18   with his young children.  He would take his children to school

19   every day.  He was very involved since day one.  It's always been

20   about his children.  How are they doing?  How are they doing in

21   school?

22            So I would just submit to Your Honor that my client is

23   accepting responsibility, he has gone along with all the

24   recommendations, including the consent forfeiture, and ask that

25   Your Honor accept the plea of 72 months.

1    (It is the policy of this court that every guilty plea

2    and sentencing proceeding include a bench conference concerning

3    whether the defendant is or is not cooperating.)

4         THE COURT:  Okay.  Let me explain to Mr. Jones that he

5    has, sir, the absolute right to address the Court in your own

6    behalf if you would like to.  You're not required to.  If you

7    chose not to, I would never hold it against you.  It is, of

8    course, entirely up to you.  But if wish to say anything, this

9    would be the time.

10        THE DEFENDANT:  Yeah.  Yeah.  I'd like to say a couple

11   things, if you don't mind.  I apologize for, you know what I'm

12   saying, for coming through these processes or coming through

13   these doors again.  When I committed them crimes, I was younger.

14   I was like 18, 19 years old.  I really apologize.  Like I say, I

15   didn't really want to waste the state's time or their effort

16   trying to go to trial, knowing that I was wrong in this case.

17   You know what I mean?  I'm just trying to get back out there as

18   fast as I can to my kids and accept responsibility, move on with

19   my life, and try not to ever get myself caught up in these

20   situations again.  You know what I mean?

21        I'm older now.  I was really trying.  You know what I

22   mean?  I took my daughter to school every day.  I picked my son

23   up from day care.  I was like the main provider in their life.  I

24   lost my job.  My uncle passed.  You know what I mean?  I kind of

25   cut down the wrong road.  You know what I mean?  And I apologize.

1    I apologize to you and my family by even having them, you know

2    what I mean, keep going through this with me.  You know what I

3    mean?  That's it.

4             I apologize.  You know what I mean?

5             THE COURT:  Well, thank you, sir.  That's much

6    appreciated.  And I do have a couple remarks.  I will go along

7    with the (C) plea, but I have to say, it must have been your

8    lucky day that you had Mr. Hanlon as the prosecutor in this case

9    because it's a rare day that I see the government recommend a

10   sentence below, substantially below, in my view, 15 months, the

11   bottom of the guidelines.  That doesn't happen every day.

12            I do commend the prosecutor.  I think he was quite

13   reasonable, and he gave his reasons.  I think they're sound.  It

14   easily could go a different direction, though.  And I do feel

15   compelled to say a few things to you, Mr. Jones.

16            For one, I would hope that perhaps I can inspire you to

17   turn yourself around.  And for another, there are some very

18   serious aspects to this case, and I feel I would be remiss if I

19   didn't let you know what I was thinking.

20            First of all, guns are a huge problem in our community.

21   The violence has to stop.  And it has to stop.  People blame the

22   courts because here's the person standing before the Court, had a

23   loaded weapon.  For what possible reason could you have had that

24   gun except to use it?  And enough is enough.

25            And there's certainly every reason to say that the

1   Court should dole out a sentence that's harsh, to take account

2   for the fact that this is a serious offense.  And when I couple

3   that with your prior record -- yes, your record is old to some

4   extent, and you were young.  You're not young any more.  You're

5   not old.  You have a long life ahead of you, I hope.  But you're

6   getting to the point about being old enough to know better.  And

7   you were only released on the second of the two serious offenses

8   in 2008.  So you did serve some time on that one.  So I would

9   have hoped that would have been enough to tell you that it's time

10  to turn yourself around.  It upsets me that that message didn't

11  get to you.

12          And the nature of that offense exactly proves my point

13  about guns.  People have them, they use them.  That case involved

14  an actual shooting.  And thankfully, the person wasn't killed.

15  But it's obviously a serious offense.

16          Now, the police advised that Nathaniel shot him.  I

17  take it you're not Nathaniel, are you?

18          THE DEFENDANT:  Nuh-uh.

19          THE COURT:  I don't know who the Nathaniel was.  But I

20  gather that you were there.  Is that what this was about?

21          THE DEFENDANT:  Yeah.  That's kind of sort of.  That's

22  why the judge brung me back in court and resentenced me, and I

23  went home like a couple months after that.

24          THE COURT:  Okay.  It says you were mandatorily

25  released on August 4 of '08.

1        THE DEFENDANT:  Yeah.

2        THE COURT:  So it was a shooting.  I gather you didn't

3   pull the trigger.  And I'm certainly happy to hear that.

4   Apparently, several men were there.  I don't know any more

5   details than what it says in Paragraphs 30 and 31 of the

6   Presentence Report, and that's where I was getting my information

7   from.

8        But let me say this, Mr. Jones.  You did remark about

9   your efforts to be a good father to your children.  And I hope

10  that that will carry you forward.  You can't be a good father to

11  your children if you're locked up --

12       THE DEFENDANT:  Yes.

13       THE COURT:  -- and committing crimes.  They deserve you

14  to be in their life.  And they need you.  And they need you to be

15  a good role model to them.

16       So I'm hopeful that you'll take advantage of what

17  frankly I think could be argued as a lenient sentence today.

18  Even though it's one the government recommends, I have to sign

19  off on it, so to speak, and I am.  It is one that I have to

20  justify.

21       I want to make a few comments to you because Congress

22  tells the judges there are a number of things the judges are

23  supposed to consider in imposing a sentence.  One is for the need

24  for the sentence to reflect the seriousness of the offense and to

25  provide just punishment for the offense.  And the sentence could

1    be harsher, but I do agree that a sentence of 72 months

2    accomplishes that objective.  It's not an insignificant sentence,

3    particularly in the federal system where there is no parole.

4         Another is to deter others from such criminal conduct.

5    And if only this would work.  I'd like to believe that it does

6    work.  It doesn't work well enough because we need to send a

7    message loud and clear that we're not going to tolerate the use

8    of guns in our communities.

9         Another is to protect the public from further crimes of

10    the defendant.  I would like to believe you.  I would like to

11    trust you, that you have said this is it, you're going to be a

12    law-abiding member of the community from this point going

13    forward.  But only you know the answer to this.

14         And then, finally, to rehabilitate the defendant in the

15    most effective manner.  And I suppose we could spend a long time

16    discussing that one and never reach a resolution as to what would

17    be the most effective manner.  But, of course, the Court can

18    never extend the sentence for the sake of rehabilitation.  And I

19    certainly wouldn't do that here.

20         So all in all, when I weigh the pros and cons, I'm

21    willing to adopt the (C) plea.  And with this, sir, under

22    3553(a), I'm satisfied it is an appropriate sentence.  And

23    therefore, I hereby sentence you, sir, pursuant to the (C) plea,

24    to a term of imprisonment of 72 months in the Bureau of Prisons,

25    with the sentence to run from November 25, 2013, and upon your

1    release place you on a period of supervised release for three

2    years.

3            And I will impose the mandatory and standard conditions

4    of supervised release adopted by the Court and the Probation

5    Office, and the following special conditions:  That you

6    satisfactorily participate in a treatment program approved by the

7    Probation Office relating to substance abuse and/or alcohol

8    abuse, which may include evaluation, counseling, and testing as

9    deemed necessary; that you satisfactorily participate in a

10   vocational or educational program; and that you pay a mandatory

11   special assessment of $100, as required by law.

12           For the reasons stated in the Presentence Report, it

13   does not appear to me that you have the ability to pay a fine.

14   And, therefore, under 5E1.2(e), I will waive imposition of a

15   fine.  I have, of course, already signed the order of forfeiture.

16           I know, because this was an information, there are no

17   other open counts.

18               Is there any legal objection to the sentence?

19               MR. HANLON:  Not from the government, Your Honor.

20               THE COURT:  Any requests from the defense?

21               MS. LEVINE:  I do have just a few requests, Your Honor,

22   if I may.  I would ask that Your Honor make a recommendation --

23   we're not sure as to his eligibility for camp status -- but if he

24   is eligible, that he be recommended to be placed in a camp either

25   at Cumberland or Fort Dix.  If not, if he's medium

classification, he would like to go to Fort Dix in New Jersey.

He would like to stay as close to home as possible. He does have

young children.

THE COURT: I will certainly make those

recommendations.

MS. LEVINE: Thank you. And if I may, just one more

request, Your Honor. Pursuant to supervised release conditions,

there is the substance and alcohol abuse program. If Your Honor

is inclined to make a recommendation that he be eligible for the

programs that are offered at either institution, any drug or

alcohol program that he may get into. I believe it's the RDAP

program. If Your Honor wouldn't mind recommending that program,

so that way he's ready and able to get into these programs when

he is released.

THE COURT: I certainly recommend the RDAP program. Do

you have any legal objection to any aspect of the sentence?

MS. LEVINE: I have no legal objection, Your Honor.

THE COURT: Okay. So really, Mr. Jones, I think it's

up to you now. I really do want to encourage you in every way

that I can. And I want to make a comment about supervised

release, because you have some experience with the state system,

and so do I.

I think it works a little bit differently here. The

resources are better and we have a terrific group of people. I'd

like you to understand that supervised release is not meant to

1   impede your life or make life difficult for you.  It's actually

2   meant to help you help yourself.  And if you try to have that

3   attitude about it, it might go a long way.  But it's a terrific

4   group of people.  They really try to work with people who've been

5   incarcerated to help you get situated and get yourself going in a

6   positive way.

7           Did you want to ask me something?

8           THE DEFENDANT:  Yeah.  My main concern is when I get

9   out of here, I just want to have the type of resources so I can

10  get back in the community because, like I said, like how you read

11  the part when they said Nathaniel, you know what I mean, like I

12  was there, but because I wouldn't say who, I guess because I

13  wouldn't snitch on my, whoever, whoever really committed the

14  crime, I was placed in jail.  And then I felt like when I came

15  home after doing the eight years, it really wasn't, it really

16  wasn't nothing for me to be offered.  You know what I mean?

17          THE COURT:  Well, it's not going to be easy.  I mean,

18  it never is easy for someone, unfortunately, who has a record and

19  has served time.  But I think that they will do their best to

20  work with you, and then you just need to do your part.  So if you

21  take advantage of whatever resources are provided for you,

22  hopefully it will help you get on your way.  And that's really

23  all I can say about it.  It's not going to be easy, as I said.

24  It couldn't be.

25          People do end up leading very productive lives after

1    having committed crimes.  So it's not, no reason, as far as I can

2    tell, anything about you, that you couldn't be one of those

3    people.

4            THE DEFENDANT:  Thank you.

5            THE COURT:  Sir, let me advise you that in Paragraph 14

6    of your plea agreement, you waived many of your rights to appeal.

7    And I just want to doublecheck it, see exactly what it says.

8            You reserved the right to appeal if the Court imposed a

9    sentence that exceeded 72 months.  Obviously, that didn't happen.

10   Nonetheless, if you believe you have any grounds to appeal and

11   you wish to exercise them, you must note an appeal within 14 days

12   from the entry of the Judgment and Commitment Order.

13          And I would ask defense counsel to confirm contact with

14   the defendant during this period in the event he wishes to note

15   an appeal.

16          MS. LEVINE:  Okay.  You will call me next week and we

17   will talk and discuss whether you want to file within that 14

18   days.  Do you understand?

19          THE DEFENDANT:  Yes.

20          MS. LEVINE:  Thank you, Your Honor.

21          THE COURT:  Anything else?

22          MS. LEVINE:  Is there anything else that you would like

23   to say to Her Honor, anything you would like to say on your

24   behalf, or any other recommendations that you'd ask me to make on

25   your behalf that I did not?

1          THE DEFENDANT:  No.  The fact that, about the cell

2     phone.

3          MS. LEVINE:  He has asked that, there are three things

4     that are listed on the consent forfeiture.  His phones were also

5     seized.

6          THE COURT:  The what?  I'm sorry?

7          MS. LEVINE:  His cell phones.  He would like to see if

8     he could get those back.  If not, he does understand, however,

9     there are pictures of his children on the phone and he would like

10    to see if they could be downloaded and provided to, I guess, me

11    or my office, and then I can provide them to him.

12         MR. HANLON:  Your Honor, I'll invite Ms. Levine to

13    contact me.  I'll put her in touch with the appropriate resources

14    of the Baltimore City Police Department to see if any of that

15    property could be returned to the defendant.

16         THE COURT:  Okay.  They'll work on it.  Nobody can

17    promise.  But hopefully, they will be able to either get you the

18    photos or get you the phone.

19         Good luck to you, sir.

20         (Conclusion of Proceedings at 3:42 p.m.)

21

22

23

24

25

1                    REPORTER'S CERTIFICATE

2

3          I, Mary M. Zajac, do hereby certify that I recorded

4    stenographically the proceedings in the matter of USA v. Daniel

5    Jones, Case Number(s) ELH-14-259, on August 8, 2014.

6          I further certify t hat the foregoing pages constitute

7    the official transcript of proceedings as transcribed by me to

8    the within matter in a complete and accurate manner.

9          In Witness Whereof, I have hereunto affixed my

10   signature this _____ day of _____, 2014.

11

12

13

14          _____

             Mary M. Zajac,
15          Official Court Reporter

16

17

18

19

20

21

22

23

24

25

## $

**$10,751** [1] - 8:1
**$100** [1] - 7:21, 18:11
**$12,500** [1] - 7:20
**$125,000** [1] - 7:20
**$250,000** [1] - 7:18
**$760** [1] - 8:2

## '

**'08** [1] - 15:25

## 1

**10** [3] - 6:14, 7:1, 12:6
**101** [1] - 1:23
**108** [1] - 7:4
**11** [1] - 3:16
**11(c)(1)(C** [1] - 3:17
**12** [1] - 7:22
**13** [1] - 7:22
**14** [3] - 21:5, 21:11, 21:17
**15** [3] - 9:6, 9:8, 14:10
**18** [9] - 3:13, 4:18, 7:1, 7:8, 7:14, 7:19, 11:3, 12:7, 13:14
**19** [2] - 12:7, 13:14
**1999** [1] - 6:5

## 2

**2** [1] - 7:17
**2001** [1] - 6:13
**2008** [1] - 15:8
**2013** [4] - 3:19, 8:2, 17:25
**2014** [4] - 1:10, 3:11, 23:5, 23:10
**21201** [1] - 1:24
**24** [2] - 5:2, 10:19
**25** [4] - 3:19, 8:1, 8:2, 17:25
**25th** [2] - 11:20, 12:15
**27** [2] - 5:22, 7:2
**29** [1] - 3:15
**2K2.1(a)(2** [2] - 4:18, 5:1
**2K2.1(b)(4)(A** [1] - 5:7
**2K2.1(b)(6)(B** [1] - 5:10

## 3

**3** [1] - 7:3
**30** [2] - 5:12, 16:5

## 31
**31** [1] - 16:5
**3553(a** [3] - 10:13, 11:4, 17:22
**3553(a)** [1] - 11:3
**3561(c)(1** [1] - 7:14
**3571(b)(3)** [1] - 7:19
**3583(b)(2)** [1] - 7:8
**3:06** [1] - 2:1
**3:42** [1] - 22:20
**3E1.1(a)** [1] - 5:15
**3E1.1(b** [1] - 5:17

## 4

**4** [2] - 3:11, 15:25

## 5

**5B1.1(a** [1] - 7:17
**5D1.1(a** [1] - 7:10
**5D1.2(a)(2** [1] - 7:13
**5E1.2(c)(3** [1] - 7:20
**5E1.2(e** [1] - 18:14

## 7

**7** [1] - 6:13
**72** [9] - 3:18, 9:1, 9:8, 11:15, 12:14, 12:25, 17:1, 17:24, 21:9

## 8

**8** [2] - 1:10, 23:5
**87** [2] - 7:3, 9:7

## 9

**9** [1] - 7:25
**922(g)(1** [1] - 4:18
**922(g)(1)** [1] - 3:13
**924(a)(2)** [1] - 7:1

## A

**abiding** [1] - 17:12
**ability** [1] - 18:13
**able** [4] - 2:25, 12:17, 19:13, 22:17
**absolute** [1] - 13:5
**abuse** [3] - 18:7, 18:8, 19:8
**accept** [3] - 10:4, 12:25, 13:18
**acceptance** [2] - 9:23, 11:12
**accepted** [3] - 5:14, 10:1, 12:1
**accepting** [2] - 11:23, 12:23
**accomplishes** [1] - 17:2
**account** [1] - 15:1
**accurate** [1] - 23:8
**accustomed** [1] - 9:25
**actual** [1] - 15:14
**add** [1] - 5:11
**addition** [1] - 9:18
**address** [1] - 13:5
**adopt** [1] - 17:21
**adopted** [1] - 18:4
**advantage** [2] - 16:16, 20:21
**advise** [1] - 21:5
**advised** [1] - 15:16
**advisory** [2] - 3:25, 4:1
**affixed** [1] - 23:9
**afternoon** [2] - 2:6, 3:21
**agree** [1] - 17:1
**agreed** [3] - 4:2, 5:16, 7:23
**agreement** [6] - 3:17, 5:16, 7:22, 8:10, 8:17, 21:6
**ahead** [1] - 15:5
**alcohol** [3] - 18:7, 19:8, 19:11
**Allison** [2] - 1:18, 2:7
**AMERICA** [1] - 1:4
**analyzed** [1] - 4:12
**answer** [1] - 11:21
**anticipation** [1] - 5:15
**apologize** [5] - 13:11, 13:14, 13:25, 14:1, 14:4
**appeal** [5] - 21:6, 21:8, 21:10, 21:11, 21:15
**Appeals** [1] - 3:24
**appear** [1] - 18:13
**appearance** [2] - 9:13, 10:2
**Appearances** [1] - 1:15
**Application** [1] - 7:17
**appreciated** [1] - 14:6
**approaching** [1] - 10:4
**appropriate** [3] - 4:6, 17:22, 22:13
**approved** [1] - 18:6
**argued** [1] - 16:17
**arrest** [1] - 12:15
**arrested** [1] - 11:19
**arrive** [1] - 5:12
**arriving** [1] - 4:5
**aside** [1] - 10:1
**aspect** [1] - 19:16
**aspects** [1] - 14:18
**assault** [3] - 6:10, 6:11,

10:24
**assessment** [3] - 4:8, 7:21, 18:11
**assuming** [1] - 9:7
**assure** [1] - 2:24
**attitude** [1] - 20:3
**August** [3] - 1:10, 15:25, 23:5

## B

**background** [4] - 4:14, 9:9, 9:11, 9:15
**bail** [1] - 11:20
**Baltimore** [4] - 1:11, 1:24, 6:5, 22:14
**base** [5] - 5:1, 5:6, 5:9, 10:19
**based** [3] - 4:8, 4:24, 7:2
**Behalf** [2] - 1:16, 1:18
**behalf** [4] - 2:8, 13:6, 21:24, 21:25
**below** [7] - 9:2, 9:6, 9:22, 10:25, 11:14, 14:10
**below-guidelines** [1] - 11:14
**bench** [1] - 13:2
**benchmark** [1] - 4:24
**Bennett** [2] - 2:13
**best** [1] - 20:19
**better** [2] - 15:6, 19:24
**bit** [2] - 9:22, 19:23
**blame** [1] - 14:21
**bottom** [1] - 14:11
**briefly** [1] - 12:2
**brings** [1] - 5:3
**brung** [1] - 15:22
**Bureau** [1] - 17:24

## C

**calculation** [2] - 3:25, 5:25
**calculations** [5] - 4:4, 4:12, 4:15, 8:19
**camp** [2] - 18:23, 18:24
**care** [2] - 12:9, 13:23
**carry** [1] - 16:10
**Case** [2] - 2:3, 23:5
**case** [15] - 4:7, 4:12, 9:7, 9:11, 9:14, 9:16, 9:20, 9:24, 11:11, 11:15, 11:18, 13:16, 14:8, 14:18, 15:13
**CASE** [1] - 1:5
**cases** [2] - 3:23, 9:25
**category** [4] - 5:24,

**caught** [1] - 13:19
**cell** [2] - 22:1, 22:7
**certain** [1] - 10:13
**certainly** [8] - 9:5, 10:7, 10:17, 14:25, 16:3, 17:19, 19:4, 19:15
**CERTIFICATE** [1] - 23:1
**certify** [2] - 23:3, 23:6
**charging** [1] - 3:12
**children** [7] - 12:9, 12:10, 12:18, 12:20, 16:9, 16:11, 19:3, 22:9
**chose** [1] - 13:7
**Circuit** [2] - 3:24, 6:5
**circumstances** [4] - 4:9, 9:15, 9:16, 11:5
**City** [2] - 6:6, 22:14
**Class** [1] - 3:14
**classification** [1] - 19:1
**clear** [1] - 17:7
**clearly** [1] - 11:8
**client** [6] - 2:9, 2:14, 2:25, 8:13, 11:23, 12:22
**close** [1] - 19:2
**colleague** [1] - 3:7
**comfortable** [4] - 9:21, 10:13, 10:14, 11:2
**coming** [1] - 13:12
**commend** [1] - 14:12
**comment** [1] - 19:20
**comments** [1] - 16:21
**commission** [1] - 6:11
**Commission** [1] - 4:17
**Commitment** [1] - 21:12
**committed** [4] - 5:2, 13:13, 20:13, 21:1
**committing** [1] - 16:13
**communication** [1] - 11:22
**communities** [1] - 17:8
**community** [4] - 11:7, 14:20, 17:12, 20:10
**compelled** [1] - 14:15
**complete** [1] - 23:8
**concede** [1] - 12:4
**concern** [1] - 20:8
**concerning** [1] - 13:2
**conclusion** [1] - 22:20
**conditions** [3] - 18:3, 18:5, 19:7
**conduct** [1] - 17:4
**conference** [1] - 13:2
**confirm** [1] - 21:13
**Congress** [1] - 16:21
**connection** [2] - 3:10, 5:8
**cons** [1] - 17:20

25

**consent** [6] - 7:24, 8:3, 8:9, 8:16, 12:24, 22:4
**consider** [2] - 5:24, 9:10, 16:23
**consistent** [1] - 8:23
**constant** [1] - 11:22
**constitute** [1] - 23:6
**contact** [2] - 21:13, 22:13
**contemplated** [1] - 8:9
**content** [1] - 3:5
**context** [4] - 10:13, 11:1, 11:11, 11:13
**controlled** [1] - 5:5
**convicted** [1] - 3:12
**conviction** [2] - 6:3, 6:9
**convictions** [4] - 5:4, 9:16, 10:21, 10:24
**cooperating** [1] - 13:3
**correct** [3] - 8:8, 9:6, 9:7
**correctly** [1] - 4:4
**counsel** [8] - 2:5, 2:11, 2:22, 2:24, 4:15, 6:2, 6:22, 21:13
**counseling** [1] - 18:8
**Count** [1] - 3:11
**counts** [1] - 18:17
**couple** [4] - 13:10, 14:6, 15:2, 15:23
**course** [7] - 2:10, 3:14, 4:7, 4:9, 13:8, 17:17, 18:15
**court** [4] - 10:3, 11:20, 13:1, 15:22
**COURT** [32] - 1:1, 2:5, 2:9, 2:15, 2:19, 2:22, 2:24, 3:4, 3:9, 5:21, 6:19, 6:25, 8:7, 8:14, 8:16, 8:25, 11:16, 13:4, 14:5, 15:19, 15:24, 16:2, 16:13, 18:20, 19:4, 19:15, 19:18, 20:17, 21:5, 21:21, 22:6, 22:16
**Court** [19] - 3:23, 3:24, 4:3, 4:7, 4:10, 4:11, 5:24, 6:5, 7:6, 7:9, 9:3, 9:10, 13:5, 14:22, 15:1, 17:17, 18:4, 21:8, 23:15
**Court's** [1] - 3:22
**Courthouse** [1] - 1:23
**courts** [1] - 14:22
**covered** [1] - 8:18
**crime** [3] - 5:4, 6:12, 20:14
**crimes** [4] - 13:13, 16:13, 17:9, 21:1
**CRIMINAL** [1] - 1:5
**criminal** [14] - 5:14, 5:23, 6:20, 6:22, 7:3,

10:16, 10:20, 11:6, 11:12, 12:2, 12:4, 17:4
**Criminal** [1] - 2:3
**Cumberland** [1] - 18:25
**currency** [2] - 8:1, 8:2
**cut** [1] - 13:25

**D**

**DANIEL** [1] - 1:6
**Daniel** [3] - 2:3, 2:8, 23:4
**date** [2] - 12:14, 12:15
**daughter** [1] - 13:22
**days** [2] - 21:11, 21:18
**decade** [1] - 10:22
**deduction** [1] - 5:17
**deductions** [3] - 5:11, 5:13, 5:22
**deemed** [1] - 18:9
**Defendant** [2] - 1:7, 1:18
**defendant** [12] - 5:25, 6:19, 7:14, 7:23, 10:11, 10:18, 11:7, 13:3, 17:10, 17:14, 21:14, 22:15
**DEFENDANT** [9] - 13:10, 15:18, 15:21, 16:1, 16:12, 20:8, 21:4, 21:19, 22:1
**defendant's** [7] - 3:11, 5:23, 8:4, 9:13, 9:23, 10:16, 11:6
**defense** [5] - 8:10, 8:11, 10:3, 18:20, 21:13
**degree** [4] - 6:9, 6:10, 6:11, 10:24
**demonstrated** [1] - 10:10
**Department** [1] - 22:14
**described** [1] - 8:3
**deserve** [1] - 16:13
**details** [1] - 16:5
**deter** [2] - 11:7, 17:4
**different** [1] - 14:14
**differential** [1] - 9:10
**differently** [1] - 19:23
**difficult** [1] - 20:1
**direction** [1] - 14:14
**directly** [1] - 2:8
**discuss** [4] - 9:14, 9:15, 21:17
**discussing** [1] - 17:16
**disposition** [1] - 4:3
**dispute** [2] - 6:2, 8:20
**distribute** [2] - 6:4, 6:12
**DISTRICT** [2] - 1:1, 1:1
**DIVISION** [1] - 1:2
**Dix** [2] - 18:25, 19:1

**document** [1] - 8:13
**dole** [1] - 15:1
**doors** [1] - 13:13
**doublecheck** [1] - 21:7
**down** [1] - 13:25
**downloaded** [1] - 22:10
**driven** [1] - 10:21
**drug** [1] - 19:10
**during** [1] - 21:14

**E**

**easily** [1] - 14:14
**easy** [3] - 20:17, 20:18, 20:23
**ECF** [1] - 3:15
**educational** [1] - 18:10
**effective** [2] - 17:15, 17:17
**effort** [1] - 13:15
**efforts** [1] - 16:9
**eight** [1] - 20:15
**either** [5] - 3:4, 5:4, 18:24, 19:10, 22:17
**ELH-14-0259** [1] - 2:3
**eLH-14-259** [1] - 1:6
**ELH-14-259** [1] - 23:5
**eligibility** [1] - 18:23
**eligible** [4] - 7:15, 7:16, 18:24, 19:9
**Ellen** [1] - 1:12
**encourage** [1] - 19:19
**end** [2] - 9:18, 11:4, 20:25
**entered** [1] - 3:17
**entirely** [1] - 13:8
**entry** [2] - 7:23, 21:12
**errors** [2] - 4:16, 8:19
**Esquire** [2] - 1:16, 1:18
**evaluation** [1] - 18:8
**event** [1] - 21:14
**events** [1] - 12:7
**exactly** [2] - 3:20, 15:12, 21:7
**exceeded** [1] - 21:9
**except** [1] - 14:24
**excuse** [1] - 6:21
**exercise** [1] - 21:11
**expedite** [1] - 11:24
**experience** [1] - 19:21
**explain** [2] - 3:20, 13:4
**expressed** [1] - 11:23
**extend** [1] - 17:18
**extent** [1] - 15:4
**extremely** [3] - 9:24, 10:3, 12:16

**F**

**fact** [4] - 10:1, 10:18, 15:2, 22:1
**factors** [2] - 11:4, 11:8
**falls** [1] - 4:11
**family** [2] - 12:17, 14:1
**far** [2] - 6:22, 21:1
**fast** [1] - 13:18
**father** [3] - 12:12, 16:9, 16:10
**FCRR** [1] - 1:22
**federal** [3] - 10:3, 11:21, 17:3
**felon** [1] - 3:13
**felony** [4] - 3:14, 5:4, 5:9, 6:1
**felt** [3] - 9:20, 11:2, 20:14
**few** [3] - 14:15, 16:21, 18:21
**file** [1] - 21:17
**final** [1] - 5:22
**finally** [1] - 17:14
**fine** [4] - 7:18, 7:20, 18:13, 18:15
**firearm** [3] - 3:12, 5:6, 5:8
**first** [4] - 6:9, 6:10, 10:24, 14:20
**five** [2] - 6:15, 7:15
**Floor** [1] - 1:23
**following** [2] - 9:13, 18:5
**FOR** [1] - 1:1
**foregoing** [1] - 23:6
**forfeiture** [7] - 7:24, 7:25, 8:3, 8:17, 12:24, 18:15, 22:4
**Fort** [2] - 18:25, 19:1
**forward** [5] - 10:11, 11:24, 12:3, 16:10, 17:13
**four** [1] - 5:10
**Fourth** [2] - 1:23, 3:24
**frankly** [1] - 16:17
**Friday** [1] - 1:10
**front** [1] - 12:4
**full** [1] - 10:7

**G**

**gather** [2] - 15:20, 16:2
**Government** [1] - 1:16
**government** [12] - 5:16, 5:19, 5:20, 8:21, 9:1, 9:20, 10:9, 11:15, 11:21, 14:9, 16:18, 18:19
**government's** [2] -

6:16, 11:25
**granted** [1] - 5:21
**grounds** [1] - 21:10
**group** [2] - 19:24, 20:4
**grow** [1] - 12:10
**guess** [3] - 8:25, 20:12, 22:10
**guideline** [4] - 4:17, 5:25, 7:11, 8:19
**guidelines** [18] - 3:25, 4:4, 4:11, 4:19, 4:24, 5:8, 7:2, 7:9, 7:13, 7:16, 7:19, 9:2, 9:6, 9:22, 11:1, 11:14, 14:11
**guilty** [6] - 3:11, 5:18, 6:5, 6:7, 6:13, 13:1
**gun** [1] - 14:24
**guns** [3] - 14:20, 15:13, 17:8

**H**

**handgun** [1] - 6:11
**Hanlon** [6] - 1:16, 2:4, 9:3, 11:16, 11:22, 14:8
**HANLON** [10] - 2:2, 5:20, 6:16, 6:23, 8:5, 8:8, 8:21, 9:5, 18:19, 22:12
**happy** [1] - 16:3
**harsh** [1] - 15:1
**harsher** [1] - 17:1
**hat** [1] - 23:6
**healthy** [1] - 9:12
**hear** [1] - 16:3
**hearing** [1] - 9:3
**help** [4] - 20:2, 20:5, 20:22
**hereby** [1] - 17:23, 23:3
**hereunto** [1] - 23:9
**himself** [1] - 12:8
**history** [12] - 5:23, 6:20, 6:22, 7:3, 10:16, 10:17, 10:20, 11:6, 11:12, 12:2, 12:5
**hold** [1] - 13:7
**Hollander** [1] - 1:12
**home** [4] - 12:17, 15:23, 19:2, 20:15
**Honor** [32] - 2:2, 2:6, 2:12, 2:23, 3:3, 5:20, 6:17, 6:23, 6:24, 8:6, 8:8, 8:21, 8:22, 9:5, 9:9, 10:15, 10:17, 10:23, 11:4, 11:17, 12:22, 12:25, 18:19, 18:21, 18:22, 19:7, 19:8, 19:12, 19:17, 21:20, 21:23, 22:12

**Honorable** [1] - 1:12
**hope** [3] - 14:16, 15:5, 16:9
**hoped** [1] - 15:9
**hopeful** [1] - 16:16
**hopefully** [2] - 20:22, 22:17
**household** [1] - 12:11
**huge** [1] - 14:20

**I**

**impede** [1] - 20:1
**important** [1] - 11:5
**impose** [2] - 7:6, 18:3
**imposed** [2] - 7:6, 21:8
**imposes** [1] - 7:9
**imposing** [1] - 16:23
**imposition** [1] - 18:14
**imprisonment** [8] - 3:18, 7:1, 7:3, 7:6, 7:10, 11:9, 11:10, 17:24
**IN** [1] - 1:1
**incarcerated** [1] - 20:5
**incarceration** [1] - 12:13
**incident** [1] - 10:22
**inclined** [1] - 19:9
**include** [2] - 13:2, 18:8
**including** [1] - 12:24
**increased** [2] - 5:7, 5:9
**indictment** [5] - 9:14, 10:6, 10:7, 10:13, 11:1
**individualized** [1] - 4:8
**individually** [1] - 4:13
**information** [4] - 3:12, 10:6, 16:6, 18:16
**initial** [2] - 9:13, 10:2
**insignificant** [1] - 17:2
**inspire** [1] - 14:16
**instant** [1] - 5:2
**institution** [1] - 19:10
**intent** [2] - 6:3, 6:12
**intention** [1] - 5:18
**interest** [1] - 11:23
**interested** [2] - 9:2, 12:16
**investigation** [2] - 8:23, 12:3
**invite** [2] - 4:16, 22:12
**involved** [3] - 11:18, 12:19, 15:13
**issues** [2] - 6:22, 8:20

**J**

**jail** [1] - 20:14
**Jason** [1] - 3:7

**Jersey** [1] - 19:1
**job** [1] - 13:24
**JONES** [1] - 1:6
**Jones** [10] - 2:3, 2:8, 3:20, 4:19, 11:18, 13:4, 14:15, 16:8, 19:18, 23:5
**judge** [1] - 15:22
**Judge** [2] - 1:12, 2:13
**judges** [1] - 16:22
**Judgment** [1] - 21:12
**June** [1] - 3:11
**justified** [1] - 11:3
**justify** [1] - 16:20

**K**

**keep** [1] - 14:2
**kids** [1] - 13:18
**killed** [1] - 15:14
**kind** [2] - 13:24, 15:21
**knowing** [1] - 13:16
**known** [1] - 11:18

**L**

**law** [3] - 7:21, 17:12, 18:11
**law-abiding** [1] - 17:12
**leading** [1] - 20:25
**least** [2] - 5:4, 7:12
**leaving** [1] - 9:25
**led** [2] - 9:17, 9:20
**legal** [3] - 18:18, 19:16, 19:17
**lenient** [1] - 16:17
**less** [1] - 7:15
**level** [8] - 5:2, 5:6, 5:9, 5:12, 5:22, 7:2, 10:19, 10:20
**levels** [1] - 5:10
**Levine** [5] - 1:18, 2:7, 9:11, 11:16, 22:12
**LEVINE** [20] - 2:6, 2:12, 2:17, 2:23, 3:2, 3:6, 6:18, 6:24, 8:12, 8:15, 8:22, 11:17, 18:21, 19:6, 19:17, 21:16, 21:20, 21:22, 22:3, 22:7
**life** [6] - 13:19, 13:23, 15:5, 16:14, 20:1
**line** [1] - 8:6
**listed** [1] - 22:4
**litigation** [1] - 10:7
**lives** [1] - 20:25
**loaded** [1] - 14:23
**locked** [1] - 16:11
**Lombard** [1] - 1:23
**look** [2] - 5:1, 12:10

**looking** [1] - 6:1
**looks** [2] - 6:6, 6:14
**lost** [1] - 13:24
**loud** [1] - 17:7
**luck** [1] - 22:19
**lucky** [1] - 14:8

**M**

**main** [2] - 13:23, 20:8
**mandatorily** [1] - 15:24
**mandatory** [4] - 4:2, 7:21, 18:3, 18:10
**manner** [3] - 17:15, 17:17, 23:8
**manual** [2] - 4:20, 4:25
**Marc** [1] - 2:7
**Mary** [3] - 1:22, 23:3, 23:14
**MARYLAND** [1] - 1:1
**Maryland** [2] - 1:11, 1:24
**massive** [1] - 10:23
**math** [2] - 9:6, 9:7
**matter** [2] - 2:3, 23:4, 23:8
**maximum** [2] - 6:25, 7:18
**mean** [11] - 13:17, 13:20, 13:22, 13:24, 13:25, 14:2, 14:3, 14:4, 20:11, 20:16, 20:17
**meaningful** [2] - 10:8, 10:12
**means** [1] - 10:19
**meant** [2] - 19:25, 20:2
**medium** [1] - 18:25
**member** [1] - 17:12
**men** [1] - 16:4
**mentally** [2] - 2:25, 3:2
**mention** [1] - 4:20
**mentioned** [1] - 4:21
**message** [2] - 15:10, 17:7
**Michael** [2] - 1:16, 2:4
**might** [1] - 20:3
**millimeter** [1] - 7:25
**mind** [2] - 13:11, 19:12
**mindful** [1] - 3:16
**minus** [1] - 9:8
**misconduct** [1] - 5:14
**mistakes** [1] - 4:15
**mitigation** [1] - 10:23
**Model** [1] - 7:25
**model** [1] - 16:15
**modestly** [1] - 11:14
**moment** [2] - 2:14, 2:17
**months** [13] - 3:18, 7:4, 9:2, 9:6, 9:8, 11:15,

12:14, 12:25, 14:10, 15:23, 17:1, 17:24, 21:9
**most** [3] - 11:5, 17:15, 17:17
**motion** [2] - 5:15, 5:21
**move** [3] - 5:19, 10:11, 13:18
**moves** [1] - 5:20
**moving** [1] - 11:24
**MR** [10] - 2:2, 5:20, 6:16, 6:23, 8:5, 8:8, 8:21, 9:5, 18:19, 22:12
**MS** [20] - 2:6, 2:12, 2:17, 2:23, 3:2, 3:6, 6:18, 6:24, 8:12, 8:15, 8:22, 11:17, 18:21, 19:6, 19:17, 21:16, 21:20, 21:22, 22:3, 22:7
**must** [7] - 4:3, 4:7, 4:11, 4:12, 5:24, 14:7, 21:11

**N**

**name** [2] - 4:1, 8:4
**Nathaniel** [4] - 15:16, 15:17, 15:19, 20:11
**nature** [2] - 11:5, 15:12
**necessarily** [1] - 4:10
**necessary** [1] - 18:9
**need** [9] - 2:17, 2:19, 11:6, 11:7, 16:14, 16:23, 17:6, 20:20
**needs** [1] - 11:13
**negotiate** [1] - 9:14
**negotiation** [1] - 9:17
**never** [5] - 4:10, 13:7, 17:16, 17:18, 20:18
**New** [1] - 19:1
**next** [2] - 11:19, 21:16
**night** [1] - 10:2
**NO** [1] - 1:5
**nobody** [1] - 22:16
**nonetheless** [3] - 4:3, 4:7, 21:10
**NORTHERN** [1] - 1:2
**note** [4] - 6:10, 10:18, 21:11, 21:14
**Note** [1] - 7:17
**nothing** [2] - 12:5, 20:16
**notification** [1] - 5:18
**November** [7] - 3:19, 6:5, 8:1, 8:2, 11:20, 12:15, 17:25
**number** [2] - 9:23, 16:22
**Number** [1] - 2:3
**Number(s** [1] - 23:5

**O**

**objection** [6] - 8:11, 8:12, 8:14, 18:18, 19:16, 19:17
**objections** [1] - 8:19
**objective** [1] - 17:2
**obviously** [2] - 15:15, 21:9
**occur** [1] - 12:7
**occurred** [2] - 12:5
**OF** [2] - 1:1, 1:4
**offense** [20] - 4:10, 5:2, 5:3, 5:5, 5:6, 5:9, 5:12, 5:22, 6:4, 7:2, 10:2, 10:19, 10:20, 11:6, 15:2, 15:12, 15:15, 16:24, 16:25
**offenses** [3] - 6:1, 6:13, 15:7
**offered** [2] - 19:10, 20:16
**office** [1] - 22:11
**Office** [2] - 18:5, 18:7
**official** [1] - 23:7
**Official** [1] - 23:15
**often** [1] - 10:12
**old** [6] - 10:22, 12:7, 13:14, 15:3, 15:5, 15:6
**older** [1] - 13:21
**once** [2] - 10:2, 11:21
**One** [1] - 3:11
**one** [16] - 4:11, 5:17, 7:10, 7:12, 7:15, 9:23, 10:5, 12:19, 14:16, 15:8, 16:18, 16:19, 16:23, 17:16, 19:6, 21:2
**open** [1] - 18:17
**Order** [1] - 21:12
**order** [5] - 7:23, 7:24, 8:3, 8:17, 18:15
**otherwise** [1] - 10:18
**own** [1] - 13:5

**P**

**p.m** [2] - 2:1, 22:20
**pages** [1] - 23:6
**Paragraph** [2] - 3:16, 21:5
**Paragraphs** [2] - 7:22, 16:5
**parole** [1] - 17:3
**part** [6] - 5:24, 7:23, 8:17, 10:10, 20:11, 20:20
**participate** [2] - 18:6, 18:9
**particularly** [4] - 8:3,

10:24, 11:1, 17:3
**parties** [2] - 4:2, 11:9
**passed** [1] - 13:24
**past** [1] - 12:6
**pause** [1] - 6:10
**pay** [2] - 18:10, 18:13
**people** [7] - 14:21, 15:13, 19:24, 20:4, 20:25, 21:3
**perhaps** [1] - 14:16
**period** [6] - 9:12, 11:8, 11:9, 12:12, 18:1, 21:14
**person** [3] - 4:8, 14:22, 15:14
**personally** [2] - 3:4, 3:6
**pertains** [1] - 7:25
**phone** [3] - 22:2, 22:9, 22:18
**phones** [2] - 22:4, 22:7
**photos** [1] - 22:18
**physically** [2] - 2:25, 3:2
**picked** [1] - 13:22
**pictures** [1] - 22:9
**pistol** [1] - 8:1
**place** [1] - 18:1
**placed** [3] - 6:6, 18:24, 20:14
**plea** [19] - 3:11, 3:16, 3:17, 5:16, 7:22, 8:9, 8:17, 8:22, 9:1, 9:4, 10:6, 12:3, 12:13, 12:25, 13:1, 14:7, 17:21, 17:23, 21:6
**plead** [1] - 5:18
**point** [4] - 4:5, 15:6, 15:12, 17:12
**points** [2] - 6:20, 6:21
**police** [1] - 15:16
**Police** [1] - 22:14
**policy** [1] - 13:1
**positive** [1] - 20:6
**possession** [3] - 3:12, 6:3, 6:12
**possible** [2] - 14:23, 19:2
**pre** [4] - 8:22, 10:13, 11:1, 12:3
**pre-indictment** [2] - 10:13, 11:1
**pre-plea** [2] - 8:22, 12:3
**presented** [1] - 7:24
**Presentence** [4] - 3:5, 3:14, 16:6, 18:12
**presents** [1] - 5:25
**preserved** [1] - 10:9
**presumes** [1] - 4:10
**pretrial** [1] - 10:7
**pretty** [3] - 4:20, 4:25, 9:12

**Prisons** [1] - 17:24
**probation** [4] - 6:7, 7:16, 7:17
**Probation** [2] - 18:4, 18:7
**problem** [1] - 14:20
**proceed** [3] - 2:10, 2:25, 3:3
**proceeding** [2] - 3:21, 13:2
**proceedings** [3] - 2:1, 23:4, 23:7
**Proceedings** [1] - 22:20
**process** [2] - 10:3, 11:25
**processes** [1] - 13:12
**productive** [1] - 20:25
**program** [7] - 18:6, 18:10, 19:8, 19:11, 19:12, 19:15
**programs** [2] - 19:10, 19:13
**promise** [1] - 22:17
**prompt** [2] - 9:24, 9:25
**property** [1] - 22:15
**pros** [1] - 17:20
**prosecutor** [2] - 14:8, 14:12
**protect** [2] - 11:7, 17:9
**proves** [1] - 15:12
**provide** [3] - 12:17, 16:25, 22:11
**provided** [2] - 20:21, 22:10
**provider** [2] - 12:9, 13:23
**PTAF** [1] - 7:25
**public** [1] - 17:9
**pull** [1] - 16:3
**punishment** [1] - 16:25
**purposes** [1] - 4:23
**pursuant** [4] - 3:22, 12:13, 17:23, 19:7
**put** [2] - 11:13, 22:13

### Q

**qualify** [1] - 6:1
**quick** [1] - 10:3
**quite** [1] - 14:12

### R

**range** [3] - 7:3, 7:11, 7:20
**rare** [1] - 14:9
**rather** [1] - 10:6
**RDAP** [2] - 19:11, 19:15

**reach** [1] - 17:16
**read** [5] - 3:4, 3:5, 3:6, 3:14, 20:10
**reading** [1] - 6:16
**ready** [6] - 2:9, 2:16, 2:20, 3:2, 10:4, 19:13
**really** [10] - 13:14, 13:15, 13:21, 19:18, 19:19, 20:4, 20:13, 20:15, 20:22
**reason** [3] - 14:23, 14:25, 21:1
**reasonable** [1] - 14:13
**reasons** [4] - 9:10, 10:5, 14:13, 18:12
**received** [2] - 6:8, 6:14
**recess** [2] - 2:20, 2:21
**recommend** [2] - 14:9, 19:15
**recommendation** [5] - 9:7, 10:14, 12:14, 18:22, 19:9
**recommendations** [3] - 12:24, 19:5, 21:24
**recommended** [2] - 12:13, 18:24
**recommending** [3] - 9:21, 11:9, 19:12
**recommends** [2] - 11:15, 16:18
**record** [4] - 2:7, 15:3, 20:18
**recorded** [1] - 23:3
**reflect** [2] - 9:19, 16:24
**rehabilitate** [1] - 17:14
**rehabilitation** [1] - 17:18
**relating** [1] - 18:7
**release** [9] - 7:5, 7:7, 7:11, 18:1, 18:4, 19:7, 19:21, 19:25
**released** [3] - 15:7, 15:25, 19:14
**remark** [1] - 16:8
**remarks** [1] - 14:6
**remembers** [1] - 12:11
**remiss** [1] - 14:18
**Report** [4] - 3:5, 3:14, 16:6, 18:12
**report** [3] - 8:23, 8:24, 12:3
**Reported** [1] - 1:22
**Reporter** [1] - 23:15
**REPORTER'S** [1] - 23:1
**request** [1] - 19:7
**requests** [2] - 18:20, 18:21
**required** [5] - 7:11, 7:21, 8:18, 13:6, 18:11
**resentenced** [1] - 15:22

**reserved** [1] - 21:8
**resolution** [1] - 17:16
**resources** [6] - 10:9, 12:1, 19:24, 20:9, 20:21, 22:13
**respect** [1] - 10:15
**responsibility** [11] - 3:22, 5:14, 9:24, 10:1, 10:5, 10:11, 11:12, 11:24, 12:1, 12:23, 13:18
**returned** [1] - 22:15
**review** [1] - 11:20
**rights** [1] - 21:6
**road** [1] - 13:25
**Roland** [1] - 2:7
**role** [1] - 16:15
**RPR** [1] - 1:22
**Rule** [1] - 3:17
**rules** [1] - 4:22
**run** [2] - 3:19, 17:25

### S

**sake** [1] - 17:18
**satisfactorily** [2] - 18:6, 18:9
**satisfied** [2] - 2:11, 17:22
**school** [3] - 12:18, 12:21, 13:22
**score** [2] - 6:20, 6:21
**seat** [2] - 2:10, 3:9
**second** [2] - 6:10, 15:7
**section** [1] - 4:20
**Section** [9] - 3:13, 4:18, 5:17, 7:1, 7:8, 7:14, 7:19, 11:3
**see** [5] - 14:9, 21:7, 22:7, 22:10, 22:14
**seeing** [1] - 9:25
**seized** [3] - 8:1, 8:2, 22:5
**send** [1] - 17:6
**sentence** [23] - 3:18, 3:19, 4:6, 4:10, 6:6, 6:8, 6:14, 11:14, 14:10, 15:1, 16:17, 16:23, 16:24, 16:25, 17:1, 17:2, 17:18, 17:22, 17:23, 17:25, 18:18, 19:16, 21:9
**Sentencing** [2] - 1:10, 4:17
**sentencing** [6] - 2:4, 3:1, 3:10, 3:25, 4:9, 13:2
**separate** [1] - 4:22
**serious** [5] - 11:13, 14:18, 15:2, 15:7, 15:15
**seriousness** [1] - 16:24
**serve** [2] - 4:4, 15:8

**served** [2] - 6:6, 20:19
**serving** [1] - 12:16
**set** [1] - 2:4
**several** [2] - 3:22, 16:4
**shooting** [2] - 15:14, 16:2
**shot** [1] - 15:16
**sign** [2] - 8:11, 16:18
**signature** [2] - 8:6, 23:10
**signed** [2] - 8:10, 18:15
**significant** [4] - 10:16, 10:24, 12:4, 12:12
**signing** [1] - 8:16
**Silverstein** [2] - 3:7, 9:12
**situated** [1] - 20:5
**situations** [1] - 13:20
**six** [3] - 6:20, 6:21, 11:10
**snitch** [1] - 20:13
**someone** [1] - 20:18
**son** [1] - 13:22
**sorry** [2] - 8:5, 22:6
**sort** [3] - 9:19, 10:1, 15:21
**sound** [1] - 14:13
**speaking** [1] - 11:22
**special** [3] - 7:21, 18:5, 18:11
**spend** [1] - 17:15
**standard** [1] - 18:3
**standing** [1] - 14:22
**starting** [2] - 4:5, 9:1
**state** [2] - 11:20, 19:21
**state's** [1] - 13:15
**STATES** [2] - 1:1, 1:4
**States** [4] - 2:2, 2:4, 3:23
**status** [1] - 18:23
**statute** [3] - 6:25, 7:6, 7:18
**statutes** [1] - 4:22
**stay** [1] - 19:2
**stenographically** [1] - 23:4
**still** [1] - 11:20
**stolen** [1] - 5:6
**stop** [1] - 14:21
**Street** [1] - 1:23
**submit** [1] - 12:22
**subsequent** [1] - 5:3
**substance** [3] - 5:5, 18:7, 19:8
**substantial** [2] - 11:8, 11:9
**substantially** [2] - 10:21, 14:10
**suggest** [2] - 10:17,

10:22
  **suggests** [1] - 4:1
  **super** [1] - 11:12
  **super-acceptance** [1] - 11:12
  **supervised** [8] - 7:5, 7:7, 7:11, 18:1, 18:4, 19:7, 19:20, 19:25
  **supportable** [1] - 11:14
  **suppose** [1] - 17:15
  **supposed** [1] - 16:23
  **Supreme** [1] - 3:23
  **suspend** [1] - 6:14
  **sustaining** [1] - 5:3
  **system** [2] - 17:3, 19:21

## T

  **Taurus** [1] - 7:25
  **term** [5] - 6:25, 7:5, 7:6, 7:9, 17:24
  **terms** [5] - 5:23, 6:25, 7:5, 7:9, 9:1
  **terrific** [2] - 19:24, 20:3
  **testing** [1] - 18:8
  **thankfully** [1] - 15:14
  **THE** [42] - 1:1, 1:1, 2:5, 2:9, 2:15, 2:19, 2:22, 2:24, 3:4, 3:9, 5:21, 6:19, 6:25, 8:7, 8:14, 8:16, 8:25, 11:16, 13:4, 13:10, 14:5, 15:18, 15:19, 15:21, 15:24, 16:1, 16:2, 16:12, 16:13, 18:20, 19:4, 19:15, 19:18, 20:8, 20:17, 21:4, 21:5, 21:19, 21:21, 22:1, 22:6, 22:16
  **therefore** [2] - 17:23, 18:14
  **thick** [2] - 4:20, 4:25
  **thinking** [1] - 14:19
  **three** [7] - 5:22, 6:8, 6:22, 7:7, 7:12, 18:1, 22:3
  **three-year** [1] - 6:8
  **time-served** [1] - 6:6
  **timely** [1] - 5:17
  **today** [2] - 5:3, 16:17
  **together** [1] - 3:8
  **tolerate** [1] - 17:7
  **took** [1] - 13:22
  **total** [3] - 3:18, 5:22, 7:2
  **touch** [1] - 22:13
  **transcribed** [1] - 23:7
  **transcript** [1] - 23:7
  **translates** [1] - 6:21
  **treatment** [1] - 18:6
  **trial** [1] - 13:16

  **trigger** [1] - 16:3
  **trust** [1] - 17:11
  **try** [3] - 13:19, 20:2, 20:4
  **trying** [3] - 13:16, 13:17, 13:21
  **turn** [2] - 14:17, 15:10
  **two** [9] - 2:14, 2:17, 5:4, 5:7, 5:13, 5:25, 9:9, 9:19, 15:7
  **type** [1] - 20:9

## U

  **U.S** [1] - 1:23
  **ultimately** [1] - 6:8
  **uncle** [1] - 13:24
  **under** [19] - 3:16, 3:17, 5:7, 5:10, 5:15, 5:17, 7:1, 7:2, 7:8, 7:10, 7:12, 7:16, 7:17, 7:19, 7:22, 11:3, 17:21, 18:14
  **undertake** [1] - 3:24
  **unfortunately** [1] - 20:18
  **unique** [1] - 11:11
  **UNITED** [1] - 1:1, 1:4
  **United** [4] - 2:2, 2:4, 3:23
  **up** [8] - 5:11, 12:10, 13:8, 13:19, 13:23, 16:11, 19:19, 20:25
  **upsets** [1] - 15:10
  **US** [2] - 8:1, 8:2
  **USA** [1] - 23:4
  **USC** [7] - 3:13, 4:18, 7:1, 7:8, 7:14, 7:19, 11:3

## V

  **verdict** [1] - 2:13
  **versus** [1] - 2:2
  **view** [1] - 14:10
  **violating** [1] - 6:7
  **violation** [2] - 3:13, 4:17
  **violence** [3] - 5:4, 6:12, 14:21
  **visited** [1] - 3:7
  **vocational** [1] - 18:10

## W

  **waive** [1] - 18:14
  **waived** [1] - 21:6
  **waiver** [1] - 10:6
  **Walker** [1] - 2:7
  **wants** [1] - 12:9
  **waste** [1] - 13:15

  **wasting** [1] - 11:25
  **weapon** [1] - 14:23
  **week** [2] - 2:13, 21:16
  **weigh** [1] - 17:20
  **West** [1] - 1:23
  **Whereof** [1] - 23:9
  **who've** [1] - 20:4
  **willing** [1] - 17:21
  **willingness** [1] - 10:10
  **wish** [2] - 13:8, 21:11
  **wishes** [1] - 21:14
  **Witness** [1] - 23:9
  **word** [1] - 2:15
  **works** [1] - 19:23

## Y

  **year** [3] - 6:8, 7:10, 7:12
  **years** [10] - 6:14, 7:1, 7:7, 7:16, 11:10, 12:6, 12:7, 13:14, 18:2, 20:15
  **young** [5] - 12:8, 12:18, 15:4, 19:3
  **younger** [1] - 13:13
  **yourself** [4] - 14:17, 15:10, 20:2, 20:5

## Z

  **Zajac** [3] - 1:22, 23:3, 23:14
  **Zayon** [1] - 2:7